J-A08011-25
J-A08012-25
J-A08013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DERRICK CHAPPELL | : | No. 1256 EDA 2024 |

Appeal from the PCRA Order Entered March 28, 2024
In the Court of Common Pleas of Delaware County Criminal Division at No(s): CP-23-CR-0003607-1999

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1257 EDA 2024 |
| SAM GRASTY | | |

Appeal from the PCRA Order Entered March 28, 2024
In the Court of Common Pleas of Delaware County Criminal Division at No(s): CP-23-CR-0003608-1999

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1258 EDA 2024 |
| MORTON JOHNSON | | |

Appeal from the PCRA Order Entered March 28, 2024

J-A08011-25
J-A08012-25
J-A08013-25


In the Court of Common Pleas of Delaware County Criminal Division
at No(s):  CP-23-CR-0003609-1999

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

CONCURRING AND DISSENTING MEMORANDUM BY LAZARUS, P.J.:

**FILED JULY 22, 2026**

I respectfully dissent from the Majority's conclusion that the new DNA evidence would not compel a different verdict.  In reaching its decision, I believe the Majority has misconstrued ***Murchison***.[1]

In ***Murchison***, the defendant sought and obtained new DNA testing and filed a subsequent PCRA petition based upon those DNA results, which were obtained from a wooden slat, a sock, a blanket, and a towel.  ***See Murchison***, 328 A.3d at 7, 12.  Prior to Murchison's trial, the wooden slat had been tested, and the results had established the presence of DNA consistent with the genetic profile of the victim's, Linda Willis, and had **excluded** Murchison.  ***See id.*** at 12.  Subsequently, the post-conviction DNA testing of the wooden slat revealed a previously undetected source of trace DNA from an unknown contributor who was not Murchison.  ***See id.***  Additionally, a second pre-trial DNA test proved that Willis was a contributor to the blood stain on Willis's

---

[1] In reaching my conclusion, I observe that the facts of these cases are undisputed.  Additionally, I concur with the Majority that the petitioners have satisfied the newly discovered facts exception to the PCRA time-bar and, to that extent, I concur with the Majority.  ***See*** 42 Pa.C.S.A. § 9545(b)(1)(ii); ***see also*** Majority, at 23-24.

- 2 -

sock. *See id.* The subsequent post-conviction DNA testing of the sock showed the presence of a second, unknown contributor. *See id.* Further DNA tests conclusively showed that Murchison was not a contributor to this sample either. Lastly, pre-trial DNA results on two sources of semen, one on a blanket and one on a towel, revealed two unknown contributors. *See id.* In the post-conviction DNA results, Murchison was excluded, and an additional unknown contributor was detected. *See id.*

As a result, Murchison argued that these new results constituted after-discovered evidence that entitled him to a new trial. *See id.* The PCRA court dismissed Murchison's petition, and, ultimately, our Supreme Court affirmed. *See id.* at 12-13 (detailing procedural history).

In rejecting Murchison's claim, our Supreme Court concluded that none of the new evidence was exculpatory because, in part, the jury at Murchison's trial had heard that Murchison was not a contributor to the DNA on any of the above-described items. *See id.* at 13-14, 18-21. Our Supreme Court reasoned:

> With respect to the wooden slat, the fact remains that Willis was killed by manual strangulation. The slat was **not a murder weapon**. The absence of Murchison's DNA on the wooden slat is evidentiarily neutral: it neither implicates nor exculpates Murchison. The presence of an unknown contributor on the wooden slat and the DNA in [Michael] Cannon's[, who rented a room from Willis,] sock fits within the trial evidence regarding the transitory nature of Willis' home and the several individuals who visited it and used the wooden slat to lock the front door. As the Commonwealth argued to the jury, the lack of water and basic hygiene in Willis' house allowed for the presence of irrelevant DNA all over the crime scene. And the after-discovered DNA evidence

on the wooden slat and Cannon's sock neither placed Murchison at the scene of the crime nor excluded him.

The confirmation of Willis' blood on Cannon's boxer shorts was also addressed at trial by the Commonwealth's evidence that Cannon, believing Willis to be asleep and unable to see clearly in the dark room, shook Willis' blood-covered body to wake her up. From this testimony[,] the jury could have inferred that Willis' blood got onto Cannon's clothing.

The semen on the blanket and towel is irrelevant. This was not a sex crime. The Commonwealth did not tie Murchison to Willis sexually or through an allegation of sexual assault. **Willis was known to prostitute herself for drugs and money**, and the jury learned at trial that Murchison was excluded as a source of DNA on the towel and blanket. When he confessed to [Carolyn] Hunt,[ the mother of two of Murchison's children,] Murchison also confirmed that this was not a rape or a sexual assault. This was a fight over drug money.

The witness testimony that led the jury to convict Murchison is not undone by the post-conviction DNA testing evidence. Thomas observed Murchison near Willis' house around the time of the murder, and Murchison stated that he had just left Willis' house. [Dasheika] Bowie[, the mother of four of Murchison's children,] encountered Murchison around the time of the murder and saw that he had a black eye and a busted lip. Murchison told Bowie that he had been in a fight and had hit a woman with a wooden stick. Murchison confessed to Hunt that he had beat and strangled Willis because she "came back short." Murchison explained that the two had gotten into an argument about money, that the argument turned physical, that Murchison punched and choked Willis, that Willis passed out several times, and that Murchison strangled Willis and struck her with a wooden stick. Murchison also corrected Hunt's incorrect belief that Willis had been raped.

*Id.* at 19-20 (emphasis added, footnoted omitted).

Indeed, our Supreme Court's analysis in *Murchison* reveals that DNA cases, such as the one before us, require a fact-intensive analysis. In my view, the new DNA evidence in the instant cases does far more qualitatively

than the DNA evidence in **Murchison**. Here, the new DNA evidence makes a compelling case that not only was "UM1" in Nickens' apartment, but that UM1 was the person who assaulted and likely killed Nickens. **See** Joint Defense Exhibit 6 (Keel's Expert Report) at 6; Joint Defense Exhibit 9 (Palmbach's Expert Report), at 3-5. Despite the Majority's conclusions, there are **two credible** experts who reached that conclusion, and the new DNA evidence supports that conclusion. **See** PCRA Court Opinion, 6/17/24, at 1-7 (concluding Keel and Palmbach are credible).

Moreover, I note that the Supreme Court in **Murchison** relied, in part, on the conclusion that the wooden slat was **not** the murder weapon. **See Murchison**, **supra**. Here, Nickens was killed by blunt force trauma using a closed fist.[2] **See** Majority, at 5. Palmbach testified that if Nickens was killed

---

[2] The Majority incorrectly concludes that there is no record support for the conclusion that Nickens was killed by a "closed fist." **See** Majority, at 5 n.5. In fact, there is significant record support that Nickens was killed via blunt force trauma caused to her head via "stomping or punching." **See** N.T. Chappell's Jury Trial, 9/13/00, at 11-14 (Dr. Contostavlos testifying Nickens suffered multiple injuries "that [were] not heavy enough to cause fractures and could have been a fist"); **id.** at 12-13 (Dr. Contostavlos testifying the blunt force trauma that caused Nickens' injuries "would probably have not killed a healthy or a younger person [but] **caused [Nickens'] death** from cardiac and pulmonary physiologic changes which were **aggravated by the blunt injuries**") (emphasis added); **see also** N.T. PCRA Hearing, 8/22/23, at 99-100 (Palmbach testifying blood splatter patterns based upon fists striking Nickens' head). Thus, there is clear record support that Nickens was bludgeoned with fists.

Furthermore, on the petitioners' first appeals, the trial court summarized that Nickens' death was a result of blunt force trauma to the head with reference to Dr. Contostavlos' opinion that Nickens' injuries were caused by a fist. **See**
*(Footnote Continued Next Page)*

by the petitioners via pummeling with their fists, their trace DNA would have been present on the tested items such as Nickens' dress and sheets. *See* N.T. PCRA Hearing (Day 2), 8/22/23, at 52-55. Thus, the absence of the petitioners' DNA on any of the items indicates that they did not use the alleged murder weapon, their own fists, to kill Nickens. This is an additional basis on which to distinguish *Murchison* and conclude that petitioners were not involved in the brutal killing of Nickens.

Further, I am unpersuaded that the petitioners' previous attempts to raise the single-perpetrator defense at trial preclude them from successfully pleading and proving the after-discovered evidence test now. As noted in *Murchison*, after-discovered evidence that **strengthens** a defense may still warrant a new trial where the grade and character of that evidence is such that it would likely change the outcome. *See Murchison*, at 17-18 ("after-discovered evidence entitled the petitioner to relief because it supported and

_____

Trial Court Opinion, 7/21/01, at 7 (trial court summarizing Dr. Contostavlos' expert opinion on Nickens' cause of death via blunt force trauma). Additionally, the Commonwealth, in their brief before this Court specifically state that Dr. Contostavlos concluded Nickens' injuries were caused by a fist. *See* Appellant's Brief, at 10 (summarizing Dr. Contostavlos' testimony that Nicken' injuries were "consistent with being caused by a fist").

Certainly, I am cognizant that Dr. Contostavlos also opined that the blunt force injuries could have rendered Nickens unconscious and she may have died one or two hours after suffering those injuries. However, it is clear from the record that she would not have died but for the severe beating to her head causing shock and complications with her pre-existing medical conditions. *See* N.T. Jury Trial, 9/13/00, at 11-14. Therefore, the Majority's seeming insistence to the contrary is belied by the record.

- 6 -

confirmed the petitioner's trial testimony and rendered the defense theory much more plausible") (citing **Commonwealth v. Cooney**, 282 A.2d 29, 31 (Pa. 1971)).  Here, the DNA evidence cannot fairly be broken-down piece-by-piece but, rather, must be considered in its totality.  **See Murchison**, **supra** (concluding entire record must be considered in its totality).

In summation, the new DNA evidence shows UM1's DNA:  in the semen in Nickens' rectum; in the semen stain on the bedsheet; on the green jacket demonstrating UM1's habitual wearing of said jacket; in the semen stain on the green jacket; on the chewed red straw in the green jacket; in the bloodstain on the green jacket; and in the "background biology" on the green jacket.  **See** FACL's DNA Report, 1/12/22, at 1-37; **see also** Joint Defense Exhibit 6 (Keel's Expert Report), at 6; Joint Defense Exhibit 9 (Palmbach's Expert Report), at 3-5.  The only portions of this evidence known prior to the Petitioners' trials were that the DNA results of the semen in Nickens' rectum and the semen DNA on the green jacket specifically excluded the Petitioners. **See** Greensburg Laboratory Report, 10/25/01, at 1-6.  This **new** evidence shows that multiple items not only exclude Petitioners from ever having been in the apartment but show that there is **one** other possible perpetrator—UM1. **See** FACL's DNA Report, 1/12/22, 1-37; **see also** Joint Defense Exhibit 6 (Keel's Expert Report), at 6; Joint Defense Exhibit 9 (Palmbach's Expert Report), at 3-5.  The grade and character of this evidence exceeds that of the wooden board, blanket, towel, and sock tested in **Murchison** and, as such, I

conclude that **Murchison** is not only factually distinct but legally supports a new trial for the petitioners in the instant case.

Notably, in **Murchison**, Willis was not sexually assaulted, and the semen evidence was wholly irrelevant because she was known to prostitute herself. **See Murchison**, **supra**. Additionally, as I highlighted **supra**, the wooden slat, the basis of Murchison's PCRA petition, had been tested **pre-trial and the results specifically excluded Murchison**. Consequently, the basis for the PCRA petition, re-testing of the wooden slat, was entirely cumulative of the pre-trial DNA evidence. Moreover, Willis' unkempt home was used both for her prostitution efforts and as a drug den and, therefore, the jury could easily conclude that other DNA was present throughout Willis' home unrelated to Willis' murder. **See id.** Further, the jury in **Murchison** was well aware that there was irrelevant DNA at the crime scene. **See id.**

In the instant cases, by contrast, Nickens was described by her daughter as an organized individual who kept to a strict schedule and **had no sexual partners**. **See** N.T. Chappell's Jury Trial, 9/15/00, at 72, 76, 91-93. Thus, the identity of UM1, who had, at a minimum, deposited semen in Nickens' rectum and on her bedsheet and left his jacket containing drug paraphernalia behind, is highly relevant. Logically, the same DNA samples that **exclude all petitioners**, are likewise highly relevant. As the Commonwealth argued at all three trials, the previous DNA evidence merely excluded the petitioners from sexual assault. But now, the new DNA evidence does significantly more by excluding the petitioners from being **present at all** in Nickens' home. **Cf.**

***Murchison*** (new DNA evidence revealing absence of Murchison's DNA on wooden fails to establish actual innocence where victim was killed via strangulation).

Again, here, the new DNA evidence tends to show that it was **physically impossible** for the petitioners to have been in Nickens' apartment or capable of murdering Nickens that night. The new DNA evidence goes even further by **strengthening**, not merely reasserting, petitioners' then-trial defense that UM1 was the actual perpetrator behind Nickens' death. As noted ***supra***, the petitioners presented two credible experts who explained that the new DNA evidence makes it clear that a single perpetrator, likely UM1, sexually assaulted, beat, and killed Nickens. This conclusion, supported by the evidence of record and the new DNA evidence, contravenes the Commonwealth's theory that the petitioners entered Nickens' apartment, beat her, robbed her of $30.00, killed her, did not sexually assault her, and left **no DNA** evidence.[3] ***See*** N.T. PCRA Hearing (Day 2), 8/22/23, at 52-55 (Palmbach discussing improbability of leaving no DNA at crime scene due to whirlwind appearance of apartment and beating).

---

[3] I am cognizant of the hearsay statement from Grasty's trial that he did not leave any fingerprints behind. ***See*** Majority, at 6. Assuming *arguendo* that Grasty did not, such a tenuous statement, offers nothing to the complete absence of Chappell's, Johnson's, and McElwee's DNA in Nickens' apartment. Consequently, in my view, this statement does little to overcome the qualitative difference in grade between the trial DNA evidence and the new DNA evidence.

Finally, for the reasons listed above, I would conclude that this evidence would likely result in a different outcome. Specifically, I believe that the character and grade of the DNA evidence is such that a jury would likely conclude that UM1 raped and **murdered** Nickens. Moreover, the jury would also likely conclude that none of the petitioners were present. The new DNA evidence strengthens the single-perpetrator defense and, at a minimum, would likely compel a different verdict as to the grade of homicide. ***See***

***Commonwealth v. Bonaccurso***, 625 A.2d 1197, 1200 (Pa. Super. 1993) (holding change in degree of guilt is considered "change in outcome of trial" for purposes of after-discovered evidence). Thus, even if a jury would still conclude that petitioners burglarized Nickens' home, the new DNA evidence would still likely result in a change in the grade of homicide, at a minimum, and consequently the DNA evidence satisfies the after-discovered evidence test and the PCRA court properly granted a new trial. Based upon the foregoing, after thorough review of the records in these cases, I would conclude that the PCRA court did not err in vacating Petitioners' convictions and awarding new trials.[4] Accordingly, I respectfully dissent.

_____

[4] To the extent that the Majority faults the PCRA court for its short opinion and implies that the PCRA court failed to consider the trial court record, I disagree. Further, it is beyond cavil that this Court may affirm on any basis. ***See Commonwealth v. Wiley***, 966 A.2d 1153, 1157 (Pa. Super. 2009) ("we may affirm the decision of the PCRA court if there is **any basis on the record to support the PCRA court's action**") (emphasis added, brackets omitted). I note that the PCRA court made all the requisite factual findings to reach its
*(Footnote Continued Next Page)*

J-A08011-25
J-A08012-25
J-A08013-25

_____

conclusion.  In my view, the PCRA court's opinion does not impede our review and there is no need to reprimand the PCRA court merely for authoring a brief decision.  Indeed, this Court has often affirmed cases with sparse trial court opinions without so much as a mention and to reprimand the instant PCRA court despite its efforts to conduct otherwise thorough proceedings is unnecessary.